## JIM HOPKINS v. THE STATE.

### No. 2432.     Decided June 25, 1901.

**1.—Murder—Evidence—Dying Declarations**

On a trial for murder, where it appeared that deceased had made a dying declaration which had been reduced to writing, and had also made another declaration to another person at another time which had not been reduced to writing, the fact that one of the declarations had been reduced to writing, would furnish no reason why the parol declarations made under the sense of impending death, at a different time, would not be admissible in evidence. Following Krebs v. State, 8 Texas Criminal Appeals, 1.

**2.—Same—Postponement— Surprise.**

Where defendant had the opportunity to use, but had excluded a certified copy, on file in the trial court, of deceased's dying declaration as contained in the certified copy of the opinion of the Court of Criminal Appeals, upon a former appeal (which was admissible under the statute, Revised Statutes, article 2306), he can not claim a postponement upon the ground of surprise that the court admitted proof of another parol declaration by deceased to another person.

**3.—Same.**

A motion to postpone the trial to obtain a written dying declaration upon the ground that there was a conflict between it and the parol declaration as

proven, was properly refused where the written declaration contained the substance of the declaration only, and the witness testifying to the parol declaration had neither read nor heard the written dying declarations read.

4.—Same.

A motion to postpone the trial to obtain a written dying declaration, was properly refused where an opportunity to have it in court was afforded defendant and he was lacking in diligence to secure it.

Appeal from the District Court of Victoria. Tried below before Hon. James C. Wilson.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The indictment charged appellant and Jim Winston jointly with the murder of George T. Elliott, in Wharton County, on the 20th day of March, 1898, by shooting him with a pistol. The case was dismissed as to defendant Jim Winston. The venue was changed on motion of defendant, to Victoria County.

This is the second appeal taken in this case. The former appeal will be found in 53 Southwestern Reporter, 619.

Mrs. Cora Cabiness testified to deceased's dying declarations (after laying a predicate), as follows: He stated voluntarily, without persuasion or suggestion from anyone, that when he went to the house of Jim Winston and Jim Hopkins, that he did not have the least idea of having any trouble. That he asked, "Which one of you boys took my pistol from Will Dancey?" and Jim Winston replied, "Both of us." He then asked them where it was, and Jim Winston replied, "Hunt it." That about this time he saw the pistol on the table in the northwest corner of the room where Jim Hopkins was sitting, and pointed to the pistol and said, "That is my pistol, and I have come after it." Either Jim Winston or Jim Hopkins said, "You can't get that pistol unless you pay us for it." Deceased replied that he had paid for the pistol once and would not pay for it again; that it was his pistol and he was going to get it. That about this time Jim Winston, who was sitting on a bed in the corner to the left of deceased, said, "Mr. B., don't do that," and deceased then turned around to Jim Winston and said, "Why, it's my pistol," and while facing Jim Winston Jim Hopkins shot him in the back. That he had a pistol in his pants and tried to draw it while he was falling, but was so weak that he could not handle the pistol and it fell out of his hand.

No further statement necessary.

*Guy Mitchell,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty years confinement in the penitentiary; hence this appeal.

This is the second appeal from a conviction in this case. For former appeal, see 53 S. W. Rep., 619. After the case was remanded, it appears the venue was changed from Wharton to Victoria County. On the trial the State was permitted to prove the dying declarations of deceased, Geo. T. Elliott, by Mrs. Cora Cabiness. It is not necessary to discuss the predicate for this introduction, as there is no question as to its sufficiency. Appellant, however, insisted that, inasmuch as the dying declarations of deceased were reduced to writing by Dr. Seymour and read over to deceased and signed by him, the dying declarations of deceased, as proved by Mrs. Cabiness, could not be introduced as evidence. In this connection it was shown that said written declaration was attached to the record on the former appeal, and no effort was made by the State to procure the same from the clerk of the Court of Criminal Appeals, in order to be used as evidence on the trial of the case. It may be conceded that sufficient diligence was not used by the State to secure this evidence. However, the court explains that the former opinion in said case contained a full copy of the dying declaration of deceased, as testified to by Dr. Seymour; and this was offered to be used as evidence, but defendant objected to the introduction of said copy as contained in the opinion of the Court of Criminal Appeals in the case. It was further shown in the bill that the dying declaration of deceased as proved by Mrs. Cabiness was not the particular dying declaration as contained in the writing by Dr. Seymour; that deceased made several declarations to various persons who came in before he died, which were in substance the same. She testified that she did not read the dying declaration reduced to writing by Dr. Seymour; that as she came into the room she saw deceased sign the same. So the question here presented is, was the declaration testified to by Mrs. Cabiness admissible in evidence, it having been shown that deceased made a dying declaration in the presence of Dr. Seymour, which was reduced to writing? The authorities hold that, where the particular declaration about which the witness proposes to testify was reduced to writing, the writing constitutes the best evidence of the declaration, and parol evidence is not admissible. However, if more than one declaration was made by deceased,—that is, if he made dying declarations concerning the homicide at different times, and one of these declarations was reduced to writing,—it would furnish no reason why a parol declaration, made under the sense of impending death at a different time, would not be admissible. We accordingly hold that, under this rule, the testimony of Mrs. Cabiness as to dying declarations of deceased was admissible. Krebs v. State, 8 Texas Crim. App., 1; Hines v. Commonwealth (Ky.), 13 S. W. Rep., 446; Rex v. Reafon, 1 Strange, 499.

By another bill of exceptions appellant complains of the action of the court in not stopping the case, and granting him a continuance thereof, because he was surprised at the testimony of Mrs. Cora Cabiness as to the dying declarations of deceased, and he desired to procure the dying declaration as reduced to writing by Dr. Seymour, evidently for the

purpose of contradicting her; the principal point of contradiction being that Mrs. Cabiness did not state that declarant stated he made a movement to go towards Jim Hopkins when shot, and she denied that the written statement contained any such clause, and it was proposed by the written statement to show that the declarant did make such statement. It is a sufficient answer to this proposition to state that appellant had the opportunity to use the written declaration of the declarant as testified by Dr. Seymour, contained in the copy of the opinion, evidently certified to the court with the mandate from this court. This character of evidence was admissible (see article 2306, Revised Statutes); but was excluded at the instance of appellant himself. If appellant desired to contradict Mrs. Cabiness on this point, and the written statement of the declarant as testified to by Dr. Seymour would serve this purpose, he had the opportunity to use said evidence from the opinion of the court, and, not having availed himself of this, it does not occur to us that he can now complain. It is further shown by the court, in explanation of this bill, that Dr. Seymour testified he did not take down all that was said, but the substance merely, as he understood it, leaving out what he did not consider material, and that the witness Mrs. Cabiness stated that she did not read the written statement nor did she hear it read. We do not think the court committed error, under the circumstances, in refusing to postpone the case. We would, moreover, observe, as explained by the court, that, if appellant really desired the original written statement, the same facility was afforded him to have it in court as was afforded the State, and that he was lacking in diligence in not securing the original, if he desired it.

We have carefully examined the record, and in our opinion the evidence fully sustains the verdict, and the judgment is affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]